UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LESLIE KANTOR-HOPKINS, *pro se*,　　　　　　:

　　　　　　　　　Plaintiff,　　　　　　　　:　　**OPINION AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　06-CV-643 (DLI)(LB)
　　　　　　　　　　　　　　　　　　　　　　:
　　　　-against-
　　　　　　　　　　　　　　　　　　　　　　:

CYBERZONE HEALTH CLUB,　　　　　　　　　:

　　　　　　　　　Defendant.　　　　　　　　:
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge**

　　　*Pro se* Plaintiff Leslie Kantor-Hopkins ("Plaintiff") brings suit against her former employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Plaintiff alleges that she was retaliated against for lodging internal complaints of sexual harassment with her employer, Cyberzone Health Club ("Defendant"). The alleged employment discrimination took place on three separate occasions: when she was suspended from her job as a general gym attendant, when her employment was terminated, and when she had difficulty in collecting wages. Defendant declines to address the merits of the claim and instead moves to dismiss the claim in its entirety under Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiff's charges are time-barred. Plaintiff has not opposed the motion. Because Plaintiff is a *pro se* litigant, the court construes Plaintiff's papers broadly in deciding this motion, and it interprets them to raise the strongest arguments suggested. *See Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002). For the reasons set forth below, defendant's motion to dismiss is granted.

1

I.   **Facts**

Plaintiff is a forty-two year old woman who worked as a general attendant for Defendant. Vicki Apice ("Apice") owned Defendant. Apice employed Plaintiff from October 2003 until January 16, 2005. Bonnist Affirmation in Support of Mot. to Dismiss in Lieu of an Answer ("Bonnist Aff."), 10. As part of her duties, Plaintiff handled customer complaints, collected money from patrons, and cleaned the counters and the equipment on the gym floor. *Id.*

Plaintiff claims that she also performed tasks outside the scope of her official duties, such as handling incoming food shipments and placing orders for supplies. Defendant did not compensate Plaintiff for these tasks. Plaintiff alleges that, in return for these extra-contractual tasks, defendant implied that Plaintiff would receive a promotion to a managerial position. Plaintiff was never promoted. Instead, defendant promoted a "younger man" to the managerial position, even though he had only been employed for six months at that time.[1] *Id.* Even after the younger man left Defendant's employ, the position remained vacant and the Plaintiff did not receive the promotion.

In August 2004, a male patron began to sexually harass the Plaintiff by "making comments about [her] body." *Id.* After it happened a second time, Plaintiff confronted the patron and reported the incidents to Apice. Apice declined to take action.

The same patron sexually harassed the Plaintiff for a third time, and Plaintiff notified Apice. Again, Apice did nothing in response to Plaintiff's complaint. Apice allegedly explained to Plaintiff that "if you already said something to him and his behavior hasn't changed, what makes you think my saying something to him is going to help?" *Id.* at 11. In response, Plaintiff threatened to have her husband address the situation. Apice "told [Plaintiff] that whatever [her] husband did, it would have

---

[1] Plaintiff does not specify whether she had been employed for longer than six months at that point.

2

to be done outside the gym." *Id.* Without the assistance of her husband, Plaintiff again approached the patron and sought to end the harassment.

The harassment did not end. From August 2004 to January 7, 2005, the patron "leered and stared" at the Plaintiff and made "lewd and crude comments" to her. *Id.* Plaintiff asked her husband to intervene and, on the morning of January 7, he talked to the patron on the gym floor and in the locker room. Eventually, Apice asked that the feuding pair sit down in her office, presumably to discuss the situation in a less heated environment. Ten minutes later, Plaintiff's husband emerged from Apice's office and said he thought Plaintiff would be fired. Apice then called Plaintiff into her office and allegedly said, "I told you not to do this . . . . [W]hat the [expletive] [sic] is wrong with you . . . . I saw you laughing and getting your jollies telling people what's going on, I should [expletive] [sic] fire you right now." *Id.*

Apice did not fire Plaintiff that morning, but she insisted that Plaintiff leave for the day. On January 9, 2005, Apice called Plaintiff at her home and suspended her for "what [she] had done." *Id.* at 12. Before Plaintiff could go back to work, Apice called Plaintiff again on January 16 and permanently terminated her employment. On January 21, Plaintiff visited the health club in order to collect money for the services she performed on the morning of January 7. An argument ensued, and Apice told Plaintiff that she "[had] some [expletive] [sic] nerve" to ask for the money. After initially refusing to pay, Apice eventually capitulated and threw the money at the Plaintiff. It landed on the floor. In the end, Plaintiff refused the money and told Apice that she intended to pursue legal action against the Defendant.

In her complaint, Plaintiff alleges retaliatory discrimination took place on:

(a)     January 9, 2005, when Defendant suspended Plaintiff.

3

(b) January 16, 2005, when Defendant terminated Plaintiff's employment.

(c) January 21, 2005, when Defendant's owner initially refused to compensate Plaintiff for services she rendered on the morning of January 7, 2005, and subsequently threw the money on the floor.

## II. Procedural History

On December 18, 2005, 331[2] days after Plaintiff alleges that the last discriminatory action took place (the January 21, 2005 pay dispute), Plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC"). The EEOC charge only alleged retaliation for complaining of discrimination, and not the discrimination itself. The EEOC formally acknowledged receipt of the charge in a letter to the Plaintiff dated December 27, 2005. *Id.* at 16.

The EEOC formally dismissed Plaintiff's charge as being time-barred on January 20, 2006. *Id.* at 15. The letter explains that Plaintiff's charge was not filed in a timely fashion because she had filed too long after the date of the alleged discrimination. *Id.*

On February 6, 2006, Plaintiff filed her complaint with the court. In a letter of the same date, Plaintiff acknowledges that the EEOC dismissed her charge due to her failure to file her charge in a timely fashion. *Id.* at 14. Plaintiff claims, however, that the EEOC's dismissal was in error because "[d]ue to illness, [she] was not able to file the charge in a timely fashion." *Id.* Plaintiff offers no evidence or details of the alleged maladies. Plaintiff also fails to provide any details about how illness precluded her from filing the charge with the EEOC. Instead, she asks the court to let her know if it needs any further documentation regarding her medical issues. *Id.*

---

[2] The court calculated the number of days that passed independent of the EEOC's or the parties's calculation.

4

### III. 12(b)(6) Standard

The court's role in deciding a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of the Plaintiff's claims, rather than to weigh evidence that might eventually be offered at trial. *E.g., Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998); *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the Plaintiff's favor. It must also give a deferential interpretation to the pleadings of *pro se* Plaintiffs such as Kantor-Hopkins. *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In deciding the motion, the court may consider documents upon which the Plaintiff relied when drafting the complaint, such as "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in Plaintiff['s] possession or of which Plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs. Inc.*, 987, F.2d 142, 150 (2d Cir. 1993)). A motion to dismiss under 12(b)(6) must be denied unless a Plaintiff has failed to provide "any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

### IV. Retaliatory Discrimination

Under Title VII, an employer is prohibited from "discriminating against any of its employees . . . because [that employee] has opposed any practice made an unlawful employment practice by Title VII." 42 U.S.C. § 2000e-3(a) (2003). The crux of Plaintiff's claim is that Defendant retaliated against her because she complained of being sexually harassed by Defendant's patron. The alleged

5

retaliatory conduct consisted of her suspension, firing, and Defendant's initial reluctance to compensate Plaintiff for services performed.

The court employs the *McDonnell Douglas* burden-shifting analysis for evaluating Title VII retaliation claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* burden shifting analysis, the Plaintiff carries the initial burden of production and must demonstrate that (1) she engaged in an activity protected by Title VII; (2) her employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001). In order to survive a motion to dismiss, the employee's burden of proof at the prima facie stage is *de minimis*. *See Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001). If Plaintiff satisfies all four elements, she successfully establishes a prima facie case of retaliation.

In evaluating whether a Plaintiff has established a prima facie case for retaliatory discrimination, the court draws all reasonable inferences in the favor of the party opposing the motion. In this case, those inferences firmly establish both that Plaintiff's employer was aware of the allegedly protected activity and that Plaintiff suffered at least one adverse employment action. Considering Plaintiff reported the sexual harassment directly to her employer on multiple occasions, the Defendant would be hard-pressed to argue that it was unaware of the reports. In addition, "termination" and "discharge" are commonly accepted examples of adverse employment actions. The Defendant permanently terminated Plaintiff's employment on January 16, 2005. *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162, 2169 (2007); *Morris v. Lindau*, 196 F.3d 102,

110 (2d Cir. 1999). At issue is whether Plaintiff engaged in an activity protected by Title VII, and whether a causal connection exists between the activity and Plaintiff's subsequent dismissal.

A Plaintiff establishes another element of the prima facie case by pleading that she engaged in an activity protected under the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3. Plaintiff alleges that she lodged an internal complaint about sexual harassment. Complaining about sexual harassment is a protected activity. *See Schweit v. City of New York*, No. 04-CV-5462, 2007 WL 1133440, at *5 (E.D.N.Y. Apr. 17, 2007) (holding that it is "undisputed that [petitioner] [] engaged in a protected activity when he filed his internal sexual harassment complaint"). Therefore, Plaintiff has met her burden and established the third element of the burden-shifting analysis.

The fourth element that the Plaintiff must show to establish a prima facie case of retaliation is a causal relationship between the protected activity and the employer's decision to fire her. A Plaintiff may show a causal connection between the activity and the adverse employment action in several ways. For example, evidence of "retaliatory animus directed against the Plaintiff" may establish the causal connection. *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 447 (2d Cir. 1999). A Plaintiff may also demonstrate a causal connection indirectly "by showing that the protected activity was followed closely by the discriminatory treatment." *Id.*

On its face, Plaintiff's complaint mentions several vague and ambiguous reasons why Defendant fired her. For example, Plaintiff says, "[Defendant] told me that if I hadn't done what I did she would not have suspended [me]." (Bonnist Aff. 12). Plaintiff also alleges that "[Defendant] called and told me that she had spoken to many people after the incident who said I should have been fired that day. She told me that she wasn't able to work with me anymore because of what I had done." *Id.* Defendant might contend that Plaintiff has failed to make a *prima facie* case because

Plaintiff was fired for asking her husband to confront the harassing patron on Defendant's premises and not because she complained of sexual harassment. *See, e.g., Novotny v. Great American Fed. Sav. & Loan Ass'n*, 549 F. Supp. 437 (W.D.Pa. 1982) (finding that engaging in verbal confrontations with one's employer in the presence of coworkers in a manner that was disruptive constituted a superceding and valid cause for termination). However, the court must draw all reasonable inferences in favor of the non-moving party. The fact that Defendant fired Plaintiff shortly after her second internal complaint and no longer than six months after the harassment began creates both a logical and temporal relation that satisfies Plaintiff's *de minimis* burden. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (finding a causal connection when the Defendant employer discharged the Plaintiff less than two months after she filed a harassment complaint), *Singletary v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*, 9 F.3d 1236, 1243-44 (7th Cir. 1993); *c.f. Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (finding that a fifteen-month delay in filing a complaint was an excessive delay and constituted a lack of diligence); *Lawrence v. State Univ. of New York*, No. 01 CV 7395, 2002 WL 31812700, at *8 (S.D.N.Y. Dec. 12, 2002) (finding that the causal connection in a retaliation case will not survive a two-year delay in filing charges); *Gadson v. Greiner*, No. 00 CV 1179, 2000 WL 1692846, at *1 (E.D.N.Y. Sept. 27, 2000) (finding that a delay of seven and one-half months constituted a lack of diligence). In addition, Apice's considerable use of expletives in suspending Plaintiff and in reluctantly paying her might demonstrate retaliatory animus. *See DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987). Construing, as it must, *pro se* Plaintiff's complaint broadly, the court finds that Plaintiff has successfully established a prima facie case of retaliation in her complaint Moreover, an issue of fact exists as to whether Plaintiff was fired for complaining about sexual harassment or

8

was fired because her husband accosted a patron on Defendant's premises. Accordingly, dismissal on 12(b)(6) grounds is inappropriate at this time.

### V. 300-Day Filing Period

Not only must a Plaintiff alleging Title VII retaliatory employment discrimination first file a charge with the EEOC prior to bringing suit, but the charge must be filed in a timely fashion. "Under Title VII . . . a New York Plaintiff must file an administrative claim with the EEOC within 300 days of the discriminatory conduct." *Tropeano v. City of New York*, 06 CV 2218, 2006 WL 3337514 (E.D.N.Y. Oct. 31, 2006); *see* 42 U.S.C. § 2000e-5(e) ("[i]n a case of an unlawful employment practice . . . such charge will be filed . . . within three hundred days after the alleged unlawful employment practice occurred."); *see also McPherson v. New York City Dep't of Ed.*, 457 F.3d 211, 213 (2d Cir. 2006). The deadline for filing a complaint with the EEOC "is not jurisdictional" and it functions "like a statute of limitations." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80, (2d Cir. 2003). Generally speaking, if a petitioner fails to file his charge with the EEOC within the designated number of days, subsequent civil suits are time-barred. *Gomez v. Avco Corp.*, 964 F.2d 1330, 1332-33 (2d Cir. 1992).

In order to determine whether or not Plaintiff's charges are time-barred, it is first necessary to determine which alleged discriminatory employment practice or practices triggered a 300-day deadline. In *Ledbetter*, 127 S. Ct. at 2164, the Supreme Court held that "The EEOC charging period is triggered when a discrete unlawful practice takes place." The court stated:

> [T]he statutory term "employment practice" generally refers to a discrete act or single occurrence that takes place at a particular point in time. We pointed to termination, failure to promote, denial of transfer, [and] refusal to hire as examples of such discrete acts, and we held that a Title VII Plaintiff can only file a charge to cover discrete acts that occurred within the appropriate time period.

9

*Id.* at 2169 (internal quotation omitted).

Plaintiff formally cites two instances of allegedly unlawful employment conduct—her suspension on January 9, 2005 and her subsequent permanent dismissal on January 16, 2005. However, even if the later event triggered the charging period, 336 days passed in between the time Defendant terminated her employment and the time she filed charges with the EEOC. As a result, this claim is time-barred.

It is unlikely that Defendant's conduct on January 21, 2005, when Apice initially refused to pay Plaintiff and then threw her pay on the ground, constitutes an unlawful and discriminatory employment practice under *Ledbetter*. Nevertheless, even assuming *arguendo* that it does constitute a discrete unlawful act of discrimination, it still occurred 331 prior to Plaintiff filing her charges with the EEOC. As a result, this claim is also time-barred.[3]

Plaintiff does not (indeed cannot) contest Defendant's assertion that her charge of retaliatory discrimination is untimely. (Bonnist Affirmation 14). All conceivable charges are time-barred. Instead, in her letter to the court dated February 6, 2006, Plaintiff admits knowledge of the charge's untimely nature. She writes, "The EEOC [is] closing it[]s file because the charge was not filed within the recommended number of days to do so." *Id.* Therefore, unless there is some valid reason to toll the 300-day charging period, the court must grant the Defendant's motion to dismiss.

---

[3] In construing *pro se* Plaintiff's complaint as broadly as possible, a discrete unlawful employment practice might also have arisen when Defendant denied Plaintiff a promotion in favor of awarding it to a younger man. Plaintiff does not specify when this denial took place. She merely implies that it occurred prior to August 2004. Consequently, it falls well outside the scope of the 300-day charging period. Had Plaintiff formally cited this act as another instance of discrimination (which she did not), the claim would be time-barred as well.

## VI. Equitable Tolling

Plaintiff's claim that the filing deadline in 42 U.S.C. § 2000e-5 should not apply to her because she suffered from one or more unspecified illnesses is a plea for equitable tolling. Equitable tolling is a doctrine that "allows courts to extend [] statute[s] of limitation[] beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson*, 86 F.3d at 8. However, courts do not employ the doctrine of equitable tolling to remedy mere inconvenience involved in meeting a filing deadline. Rather, it is meant to be used only in "rare and exceptional circumstances," *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000), and these circumstances are those in which a party is "prevented in some extraordinary way from exercising his rights," *Johnson*, 86 F.3d at 12. These rare circumstances sometimes involve medical conditions that preclude a party from complying with a deadline, but few medical difficulties actually qualify for equitable tolling. *See, e.g., Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir. 1991) (finding that it is not enough merely to claim to have had a mental impairment during the statutory period).

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application . . . (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80-81 (internal quotation marks omitted). Furthermore, it is the Plaintiff who bears the burden of affirmatively showing that she is entitled to equitable tolling. *See Townsend v. Superintendent*, No. 05 CV 4979, 2006 WL 721517 (E.D.N.Y. Mar. 2, 2006).

Plaintiff's plea for equitable tolling fails because (1) she has not met her burden of showing that she acted with reasonable diligence; (2) she has failed to meet her burden of showing that her

11

medical difficulties were extraordinary; and (3) neither filing charges as a *pro se* litigant nor having limited experience with the law is a valid reason for equitable tolling.

Plaintiff's plea for tolling requires an affirmative showing that she was reasonably diligent in pursuing her legal rights during the time period she seeks to have tolled. However, extensive delays in filing charges serve as sufficient evidence that a party was not reasonably diligent in its efforts. *See Smith v. McGinnis*; *Gadson*, 2000 WL 1692846, at *2 ("prolonged periods of inactivity cannot be viewed as anything other than a marked lack of diligence, rendering [petitioner] ineligible for equitable tolling."); *see also Warren v. Garvin*, 219 F.3d 111 (2d Cir. 2000). In this case, there is no evidence to suggest that the Plaintiff made any effort whatsoever to file charges at any point prior to December 18, 2005, and Plaintiff has failed to show that she "acted as expeditiously as was feasible in the circumstances." *Singletary* 9 F.3d at 1244. Therefore, Plaintiff has failed to satisfy at least one element of equitable tolling.

Whether equitable tolling is appropriate due to medical difficulties depends on whether a party can show that the illness was so extraordinary that it functioned as a complete bar to the procedural steps required to file suit in a timely fashion throughout the entire time period in question. *Townsend*, 2006 WL 721517 (finding that, even if petitioner suffered from depression, he failed to present evidence that his depression prevented him from pursuing his legal rights throughout the statutory period); *see also Lee v. Superintendent*, 05 CV 5706, 2006 WL 229911 (E.D.N.Y. Jan. 31, 2006) (finding that a tuberculosis misdiagnosis, blindness and blurred vision, and loss of muscular control were all legally insufficient reasons for tolling without a showing that these conditions rendered him unable to pursue his legal rights). Whether equitable tolling should be applied is not a question of the illness' severity and it is not a question of hospitalization. *See, e.g., Rhodes v.*

*Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000) (concluding that even though petitioner suffered from extreme headaches, depression, hypertension, weight loss, a fungal infection, and an "atypical chest disorder" as a result of AIDS, and he was hospitalized three times during the one-year limitations period, tolling was unjustified); *Cox v. Edwards*, 02 CV. 7067, 2003 WL 22221059 (S.D.N.Y. Sept. 26, 2003) (finding that repeated hospitalizations and mood swings were legally insufficient reasons for tolling). *See also Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (ruling that even though the petitioner identified the illnesses from which he suffered, tolling was still rejected because her claim was "conclusory and vague.").

In this case, Plaintiff has not satisfied her burden of affirmatively showing that her alleged illnesses prevented her from filing an EEOC charge from January 21, 2005, through December 18, 2005. Instead, she does nothing more than reference one or more ambiguous illnesses without providing any details. Plaintiff also neglects to describe how these medical difficulties hampered her ability to timely file her charges with the EEOC. Therefore, there is no reason for the court to toll the 300-day charging period.

Finally, there is nothing rare or extraordinary about either filing a claim as a *pro se* litigant or having little or no expertise in litigation, and it has never been "suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Consequently, "a petitioner's *pro se* status and ignorance of the law do not merit equitable tolling." *Townsend*, 2006 WL 721517, at *2; *see also Smith*, 208 F.3d at 18 (a party's *pro se* status is legally insufficient to invoke equitable tolling); *Ayala v. Miller*, No. 03 CV 3289, 2004 WL 2126966 (E.D.N.Y. Sept. 24, 2004) ("neither a petitioner's *pro se* status, nor his lack of expertise, provides a basis for equitable tolling of

13

AEDPA's statute of limitations."); *see also Francis v. Miller*, 198 F.Supp. 2d 232, 235 (E.D.N.Y. 2002).

## VII. Conclusion

For the reasons set forth above, while Plaintiff has successfully established a prima facie case of retaliatory discrimination, she has failed to comply with the statutory deadline for filing charges with the EEOC, as set forth in 42 U.S.C. § 2000e-5, and has failed to establish a compelling and sufficient reason to toll the charging period. Accordingly, the Defendant's motion to dismiss is granted in its entirety.

SO ORDERED

DATED:    Brooklyn, New York
~~June 8, 2007~~
September 10, 2007
*DLI*
9/10/07.

/s/
DORA L. IRIZARRY
United States District Judge

14